**Opinion filed December 19, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00365-CR

_____

## SHARON LYNNE CORBIN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 17793B**

## MEMORANDUM OPINION

The jury found Sharon Lynne Corbin guilty of aggravated assault and assessed her punishment at confinement for five years. In two points of error, Appellant asserts that the trial court improperly sustained objections to two hearsay statements that she sought to introduce. We affirm.

### I. *Trial Evidence*

Appellant does not challenge the sufficiency of the evidence, but some facts are provided for context. Appellant had moved to Texas from South Carolina and

temporarily lived at Bill Guinn's house with his daughter, Lillie "Kat" Guinn. Robert Tettleton, Kat's fiancé, also lived there. Appellant, Kat, and Tettleton decided one late afternoon to go to Guitars and Cadillacs Bar in Abilene to drink and dance. They saw Amber Laird at the bar, and after they had spent some time there together, they all returned to Guinn's house.

Appellant, Laird, Kat, and Tettleton continued to drink and socialize in the dining room. Appellant claimed that, later in the night, Laird threatened "to blow [Appellant's] f-----g brains out." Laird and Kat denied that Laird threatened Appellant. Kat testified that, as the night wore on, Appellant became angry because the group had discussed her personal issues.

Laird and Kat testified that, still later while they and Tettleton were in the bedroom, Appellant entered the bedroom, pulled a knife from her purse that was on the couch in that room, and held the knife to Laird's throat. Laird testified that Appellant used the knife to cut Laird's upper chest near her neck and that Appellant used her fingernails to scratch the back of Laird's neck, her upper lip, and her nose.[1] Tettleton called the police;[2] Officer Kevin Pruitt and Officer Joshua Ward responded.

Officers Pruitt and Ward arrived, and Officer Ward took Appellant's statement and Kat's statement. Officer Ward testified that Appellant smelled of alcohol, appeared to be intoxicated, and was very agitated. He reported that Appellant said, "I only did what [Laird] deserved." He also reported that Kat gave him Appellant's knife and a field statement. Officer Ward testified that he and Officer Pruitt arrested Appellant.

---

[1]The trial court admitted nurse Amy Cullers's testimony about Laird's emergency room condition and Laird's emergency room medical records and photos that documented her injuries.

[2]The trial court also admitted the 911 audio recording of Tettleton's call.

At trial, Appellant denied that she threatened Laird or that she scratched her or cut her with the knife, but she admitted that she owned the knife and that it was in her back pocket. Appellant claimed that Laird and Tettleton had fabricated the assault to keep Appellant from telling Kat that Laird and Tettleton had sex that night in Kat's bedroom while Kat was asleep in that same bedroom. When cross-examined about how she had reached across Tettleton to attack Laird, Appellant said that she did not reach across Tettleton because he was on the other side of the bed and that she never pulled out her knife.

Appellant attempted to testify about Laird's intent to file a false police report against her because she threatened to disclose to Kat that Laird had sex with Tettleton. Appellant also tried to testify that Laird had "clawed" and "hit" herself—to make it look like Appellant injured her—and that Laird had said she was going to have Appellant arrested. The trial court sustained the State's hearsay objections to the statements. But the trial court did admit Appellant's testimony that Laird had "clawed" and "hit" herself.

## II. *Discussion and Analysis*

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). "In order for hearsay to be admissible, it must fit into an exception provided by a statute or the Rules of Evidence. TEX. R. EVID. 802." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). "Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008) (citing *Martinez v. State*, 178 S.W.3d

806, 815 (Tex. Crim. App. 2005), and *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994)).

The trial court has the discretion to admit an out-of-court statement if it falls within an exception to the general hearsay exclusion rule. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998). This court does not conduct a de novo review, but uses an abuse of discretion standard to review the trial court's evidentiary rulings. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). "An abuse of discretion occurs 'only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Zuliani*, 97 S.W.3d at 595 (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

Appellant contends that she should have been allowed to testify that Laird threatened to file a "false" assault charge against her because she intended to tell Kat that Laird had sex with Tettleton. Appellant testified, "Laird made the comment that . . . Kat[] would not believe what was going on, that she was knocked out, and . . . would stay that way. . . . Laird made the comment that [Kat] wouldn't believe . . . what had happened and continued to scratch--." The State objected on hearsay grounds; defense counsel argued that the evidence went to Laird's state of mind. The court sustained the objection and instructed the jury to disregard. Appellant argues that the statement was not hearsay because the statement related to the declarant's state of mind. TEX. R. EVID. 803(3). Appellant is correct that the statement was not hearsay, but for a different reason. In this case, a statement by Appellant about Laird's beliefs—concerning Kat's potential rejection or acceptance of Appellant's claim that Laird slept with Tettleton—was not offered to prove the truth of what Laird or Kat actually believed, but was

4

simply offered to show that Laird made a statement that may have evinced a motive or intent by her to lie.

The trial court should have overruled the State's objection to Appellant's statement because the statement was not hearsay. But because Appellant testified about the difficulties she and Laird had that evening, because she testified about the sexual liaison between Laird and Tettleton, and because she testified about Laird's and Tettleton's intention to continue their sexual relationship, the trial court's error was harmless if it did not affect Appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Mosley*, 983 S.W.2d at 259.

Appellant also contends that the trial court should have allowed her to testify that Laird was going to injure herself in order to support the assault charge. Appellant stated, "Laird started clawing herself and hitting herself in the face, stating the fact that she was gonna call the law and have me arrested for . . . cutting her with my knife." The trial court sustained the State's hearsay objection. But a statement is not hearsay if it is offered to describe one person's observations about how another person acted, unless that person's actions were intended to be a substitute for verbal expression. *See* TEX. R. EVID. 801(a).

The trial court later allowed the following from Appellant, "[Officer Ward] and I spoke and I told him about [Laird] and about her clawing herself and hitting herself," and other similar testimony. Because the "clawing and hitting" evidence was admitted later, the trial court's error was harmless if it did not affect Appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Mosley*, 983 S.W.2d at 259.

Appellant further asserts that Laird's statement that she was "gonna call the law" evinced Laird's state of mind concerning her future conduct and was admissible under TEX. R. EVID. 803(3). Rule 803(3) is an exception to the hearsay rule that allows the admission of a person's out-of-court statement concerning her then existing state of mind, including "intent, plan, [or] motive" and, thus,

5

including a statement of intended future conduct. TEX. R. EVID. 803(3); *see Saldivar v. State*, 980 S.W.2d 475, 495 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Laird never called the police; Officer Ward testified that Appellant said Laird got what she deserved; and Kat testified that Appellant attacked Laird. The trial court's decision to sustain the hearsay objection to Laird's statement that "she was gonna call the law" was outside the zone of reasonable disagreement. We disregard the error if it did not affect Appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Mosley*, 983 S.W.2d at 259.

A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *Ballard v. State*, 110 S.W.3d 538, 544 (Tex. App.—Eastland 2003, pet. dism'd, untimely filed). We review the whole record to determine whether the error influenced the jury's verdict. *Ballard*, 110 S.W.3d at 544 (citing *Mosley*, 983 S.W.2d at 259). One factor we consider is the overwhelming evidence of guilt. *Ballard*, 110 S.W.3d at 544 (citing TEX. R. APP. P. 44.2(b) and *Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)).

The jury heard Officer Ward testify that Appellant was intoxicated and agitated and that she told him that Laird got what she deserved. Laird and Kat testified that Appellant attacked Laird. Laird never called the police. Tettleton called 911, and the jury heard that call. Amy Cullers, the emergency room nurse, testified about Laird's injuries. Appellant took the stand and admitted that she had several drinks and that she passed out on the way home from the bar.

Appellant denied that she assaulted Laird, and she also denied that she reached across Tettleton to cut Laird, but she admitted that she had a knife on her and that she had a prior conviction in South Carolina for assault on a correctional employee. The trial court admitted the following evidence about Laird's state of mind: (1) Laird threatened "to blow [Appellant's] f-----g brains out"; (2) Laird and Tettleton had sex while Kat was asleep in the bedroom; and (3) Laird injured

herself to support the aggravated assault charge.  Appellant used all of this evidence to vigorously challenge the State's case.

We have reviewed the record as a whole, and we cannot say that any error in the evidentiary rulings of the trial court substantially affected Appellant's rights. We overrule Appellant's two points of error.

### III. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


December 19, 2013

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.